[No. 20086.  Department One.  December 31, 1926.]

# The State of Washington, *Respondent*, v. Lee Waite et al., *Appellants*.[1]

[1] Criminal Law (172, 221)—Trial—Evidence at Former Trial —Right of Accused to Confront Witness.  Upon the second trial of a criminal case, it is not an infringement of Const. Art. 1, § 22, providing that the accused should have the right to meet the witnesses face to face, to permit the reading of the testimony at the first trial of an absent witness, who, after reasonable diligence could not be found or produced at the second trial.

[2] Same (172, 221).  Lack of diligence upon the part of the state to produce a witness who had testified at a former trial is not shown, and it is permissible to read the testimony at the second trial where it appears that every possible clue as to the whereabouts of the absent witness was run down without avail, and that an earlier issuance of a subpoena would have made no difference in the result of the search; and especially where the testimony so read was wholly unnecessary to sustain a conviction.

[3] Same (191)—Continuance—Discretion of Court.  Denial of a continuance asked for the purpose of producing a witness is within the discretion of the trial court, where diligent search had already been made without avail.

[4] Same (106)—Evidence—Res Gestae—Acts and Statements of Third Persons.  Where police officers interrupted an attempted robbery of gambling rooms, and the robbers assumed the attitude of innocent by-standers, it is admissible, as part of the *res gestae*, to admit the statements of those present identifying the robbers, not only while they are being pointed out and arrested, but what was said after their arrest when the persons present were called upon to make sure of the identification.

[5] Robbery (9)—Instructions.  Where there was an attempt to rob a number of persons, it is proper to charge that it is not necessary to find a specific intent to rob the prosecuting witness named in the information, and it is enough to find an intent to rob the persons in the room when the prosecuting witness was one of them.

[1]Reported in 251 Pac. 855.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered December 21, 1925, upon a trial and conviction of an attempted robbery. Affirmed.

*Henry Clay Agnew,* for appellants.

*Ewing D. Colvin* and *James M. Bailey,* for respondent.

FULLERTON, J. — The appellants, Lee Waite and Dewey Gilman, were convicted of the crime of attempted robbery. The information on which they were convicted charged an attempt to rob one Harry Rounds. The evidence introduced on behalf of the state tended to show that certain Chinese were conducting gambling rooms in the city of Seattle, on the second floor of a building known as the Rex Hotel. That, shortly before midnight of August 2, 1924, the appellants, with others in concert with them, masked and armed, entered the rooms in which the gambling was conducted, pointed their arms at the proprietors and patrons of the place and ordered them to throw up their hands and get in line with their backs to the walls of the rooms. One of their number then gathered up the money that was on the gambling tables, placed it in a bag, and then proceeded to search the persons of the occupants of the place singly. The search had not proceeded far when the police of the city of Seattle entered the room. Of the persons engaged in the attempted robbery, the police arrested and took into custody the appellants and certain others of their companions, but whether all of them the record does not very clearly disclose.

There was a former trial and conviction of the appellants, which conviction was reversed for error on an appeal to this court. *State v. Waite,* 135 Wash. 667, 238 Pac. 617. On that trial, Harry Rounds testified on

behalf of the state. On the second trial, from which the appeal now before us is prosecuted, he could not be found, and the trial court permitted his testimony given at the former trial to be read to the jury from the notes of the reporter who took his testimony at that trial.

[1] It is first assigned that the court erred in admitting the testimony given by Rounds on the former trial. The authorities elsewhere, it would seem from the cases collected by counsel, are not in accord on the general question of the admissibility of such testimony. Some few hold that under no circumstances can it be admitted, others hold that it is admissible only in the case of the death of the witness, and others again hold it admissible, if the witness cannot be found after diligent search and inquiry, or the witness is shown to be beyond the jurisdiction of the court. The great majority of the cases support the latter rule and on principle it would seem that, if the testimony is admissible at all, it ought to be admissible whenever for any cause the witness cannot be produced at the subsequent trial. It is the inability to produce the witness in person that furnishes the foundation for the modification of the general rule, and this is as potent a reason under the one circumstance as it is under the other.

The precise question seems not to have been heretofore before this court. In *State v. Cushing*, 17 Wash. 544, 50 Pac. 512, the defendant was informed against for the crime of murder in the first degree. There was a former trial, at which one Thomas Hampton testified on behalf of the state. Before the second trial, he died and the state, at that trial, was permitted to read the stenographer's report of his testimony to the jury, after proving that it was a correct transcript of his

testimony. It was urged on the appeal that the admission of the testimony was error, but we refused to so hold, using this language:

"Lastly, it is claimed that the court erred in admitting the testimony given on the former trial by the deceased witness, Thomas Hampton, and it is urged with much earnestness on the part of counsel that the action of the court was an infringement of § 22 of art. 1 of the constitution, which provides that in criminal prosecutions the accused shall have a right to meet the witnesses face to face. In support of their contention counsel cite the case of *Cline v. State* (Tex.), 36 S. W. 1099, wherein the majority of the court held, under a constitution providing that the accused had a right to be confronted by the witnesses, that testimony of a deceased witness given on a former hearing was inadmissible. No other case is cited by appellant, and it seems that the overwhelming weight of authority is to the contrary. See *State v. Elliott*, 90 Mo. 350 (2 S. W. 411); *Mattox v. United States*, 156 U. S. 237 (15 Sup. Ct. 337); *State v. Johnson*, 12 Nev. 121; *State v. Wilson*, 24 Kan. 189 (36 Am. Rep. 257); 1 Bishop, New Criminal Procedure, §§ 1194-1204; Cooley, Constitutional Limitations (5th ed.), p. 388; Wharton, Criminal Evidence, § 227; 1 Greenleaf, Evidence, § 163.

"In *Mattox v. United States, supra,* all of the decisions up to that time seem to have been examined and cited by the court, and it was held, in effect, by all the judges that such evidence was not intended to be excluded by the constitution. As was said in that case, 'the substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face and of subjecting him to the ordeal of a cross-examination.'"

In *State v. Keech*, 103 Wash. 533, 175 Pac. 176, it appeared that one of the jurors fell asleep during the taking of the testimony of a witness, and the court permitted the witness's testimony to be read to the jury from the stenographer's notes. This was held

not to be error, as the "result was the same as though the witness had repeated his testimony verbatim."

The statute, also, while not in terms applicable to the situation now before us, recognizes the rule that the testimony of a witness, taken at a former hearing, may be read in evidence in criminal causes when for any reason the witness cannot personally be brought before the court. See Rem. Comp. Stat., § 2306 [P. C. § 9137]. We conclude, therefore, that the general objection to the admission of the testimony is without merit.

[2] But the appellant contends that the evidence was inadmissible for the reason that the state did not show a sufficiently diligent effort to procure the attendance of the witness. To this question, a large space in the brief is devoted, but we do not feel that we need follow the argument in detail. The time set for the trial of the cause was Monday, November 30, 1925. On the Friday preceding, the subpoenas for the witness on behalf of the state were issued and delivered to a deputy in the sheriff's office for service. The officer immediately inquired for the witness at the place of address of the witness noted on the subpoena, and was informed that he was not there and that no one at the place knew his whereabouts. The person furnishing the information, however, gave the officer the address of his brother, who, on inquiry, reported that he had seen him a few days before, but did not then know where he was. He, however, gave the officer information which led to the discovery of friends and acquaintances of the witness and his former places of residence, but it disclosed no one who then knew of the whereabouts of the witness. Every clue was diligently followed up, and we think there was sufficient diligence on the part of the officer to discover the witness after the subpoena was delivered to him, and it would seem that the only question in this regard is,

whether the state was negligent in not issuing the subpoena at a time earlier than it did issue it. But on this question we are impressed with the statement of the officer that no amount of time after the court announced that the trial would be set for the particular day would have enabled him to find the witness.

While no one directly so testified, we think the evidence bearing on the matter cannot be read without reaching the conclusion that the witness absented himself from his usual haunts for the express purpose of avoiding the service of a subpoena upon him. Within a short time after the trial, he made an affidavit on behalf of the defendants in aid of their motion for a new trial. In this affidavit, he gives what he says is his correct address, discloses knowledge that the officer had called at that address, and says that, if the officer had left word there that he was wanted, he would have "got the word immediately;" but does not say that he would have appeared. But the affidavit shows some other things not at all creditable to the witness. It shows that he had changed his allegiance; it shows that he had so far departed from his duty to relate the facts as they occurred at the scene of the crime, as to become a partisan of the defendants,—he qualified a number of his former statements, going as far in that direction as he could well go without subjecting himself to the pains and penalties of perjury. Without pursuing the inquiry further, we conclude that the court did not err in admitting the evidence on the ground of lack of diligence on the part of the state in its efforts to procure the personal attendance of the witness.

It may be well to say here that, did the guilt of the defendants depend altogether, or in any material degree, on the truth of the testimony of this witness, the court would be loath to let the verdict stand. But it

does not so depend. The state's evidence from other sources shows beyond the possibility of a doubt that the defendants are guilty of the crime charged against them. It shows that they not only intended to rob this particular witness, but every other person then in the gambling rooms, and that the only reason they did not complete the act of robbery was because of the sudden appearance of the police officers upon the scene.

[3] After the trial had been entered upon, and it appeared that the state could not produce the prosecuting witness, the defendants requested a continuance of two days in order to enable them to have a search made for the witness. This request the court refused, and error is assigned thereon. But this was a matter within the discretion of the court to be reviewed only for manifest abuse. Why the appellants expected to be successful, after the state had failed, was not made to appear, and we cannot conclude that the discretion of the court was abused.

[4] It is next urged that the court erred in the admission of evidence. As we gather the facts, the defendants and their companions, at the time of the entrance of the officers upon the scene of the attempted robbery, assumed the attitude of innocent by-standers; they discarded their masks and arms, threw up their hands, and took places among the persons they had theretofore lined up against the walls. They were identified to the officers by the actually innocent who pointed them out to the officers. The court permitted the officers to testify not only what was said and done while they were being pointed out, but what was said after their arrest and the persons present were called upon to make sure of the identification. We see no error in this. It was a part of the *res gestae*. The happenings were continuing in sequence, and it all occurred in the presence of the defendants.

[5] Complaint is made of a certain instruction given to the jury. The instructions of the court, as a whole, are not in the record, but, assuming that all that was said in the charge on the particular subject appears in the part that is before us, we find no error in it. In substance, the charge is to the effect that, to find the defendants guilty, it was not necessary to find that they had a specific intent to rob the person named in the information as the prosecuting witness; that it was enough if they found that the defendants had the intent to rob the persons they found in the room, and that one of such persons was the prosecuting witness. Manifestly, this must be the correct rule, else there could be no conviction in any case for a crime of this sort, which fails of consummation because of the intervention of the law officers. While the state could show, as they did in this instance, that the intent was to rob all of the persons present, which number included the prosecuting witness, they could not show that the specific intent was to rob any particular person. It must be remembered that the statute denounces the act of attempted robbery. The person against whom the act is directed is not the gravamen of the offense. This is a matter which the state must show in order to identify the act, and it is sufficiently identified when it is shown that the act is directed against a number, and the particular person named is one of that number.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, MITCHELL, and MAIN, JJ., concur.