[No. 32841.   Department Two.   February 14, 1955.]

RUTH GARRATT, *Appellant,* v. BRIAN DAILEY, *a Minor, by George S. Dailey, his Guardian ad Litem, Respondent.*[1]

[1]Reported in 279 P. (2d) 1091.

*Kennett, McCutcheon & Soderland* and *James P. Healy,* for appellant.

*Frederick J. Orth* and *Rode, Cook, Watkins & Orth,* for respondent.

HILL, J.—The liability of an infant for an alleged battery is presented to this court for the first time. Brian

Dailey (age five years, nine months) was visiting with Naomi Garratt, an adult and a sister of the plaintiff, Ruth Garratt, likewise an adult, in the backyard of the plaintiff's home, on July 16, 1951. It is plaintiff's contention that she came out into the backyard to talk with Naomi and that, as she started to sit down in a wood and canvas lawn chair, Brian deliberately pulled it out from under her. The only one of the three persons present so testifying was Naomi Garratt. (Ruth Garratt, the plaintiff, did not testify as to how or why she fell.) The trial court, unwilling to accept this testimony, adopted instead Brian Dailey's version of what happened, and made the following findings:

"III. . . . that while Naomi Garratt and Brian Dailey were in the back yard the plaintiff, Ruth Garratt, came out of her house into the back yard. Some time subsequent thereto defendant, Brian Dailey, picked up a lightly built wood and canvas lawn chair which was then and there located in the back yard of the above described premises, moved it sideways a few feet and seated himself therein, at which time he discovered the plaintiff, Ruth Garratt, about to sit down at the place where the lawn chair had formerly been, at which time he hurriedly got up from the chair and attempted to move it toward Ruth Garratt to aid her in sitting down in the chair; that due to the defendant's small size and lack of dexterity he was unable to get the lawn chair under the plaintiff in time to prevent her from falling to the ground. That plaintiff fell to the ground and sustained a fracture of her hip, and other injuries and damages as hereinafter set forth.

"IV. That the preponderance of the evidence in this case establishes that when the defendant, Brian Dailey, moved the chair in question *he did not have any wilful or unlawful purpose* in doing so; that *he did not have any intent to injure the plaintiff, or any intent to bring about any unauthorized or offensive contact with her person* or any objects appurtenant thereto; that the circumstances which immediately preceded the fall of the plaintiff established that the defendant, *Brian Dailey, did not have purpose, intent or design to perform a prank or to effect an assault and battery upon the person of the plaintiff.*" (Italics ours, for a purpose hereinafter indicated.)

It is conceded that Ruth Garratt's fall resulted in a fractured hip and other painful and serious injuries. To ob-

viate the necessity of a retrial in the event this court determines that she was entitled to a judgment against Brian Dailey, the amount of her damage was found to be eleven thousand dollars. Plaintiff appeals from a judgment dismissing the action and asks for the entry of a judgment in that amount or a new trial.

The authorities generally, but with certain notable exceptions (see Bohlen, "Liability in Tort of Infants and Insane Persons," 23 Mich. L. Rev. 9), state that, when a minor has committed a tort with force, he is liable to be proceeded against as any other person would be. *Paul v. Hummel* (1868), 43 Mo. 119, 97 Am. Dec. 381; *Huchting v. Engel* (1863), 17 Wis. 237, 84 Am. Dec. 741; *Briese v. Maechtle* (1911), 146 Wis. 89, 130 N. W. 893; 1 Cooley on Torts (4th ed.) 194, § 66; Prosser on Torts 1085, § 108; 2 Kent's Commentaries 241; 27 Am. Jur. 812, Infants, § 90.

In our analysis of the applicable law, we start with the basic premise that Brian, whether five or fifty-five, must have committed some wrongful act before he could be liable for appellant's injuries.

The trial court's finding that Brian was a visitor in the Garratt backyard is supported by the evidence and negatives appellant's assertion that Brian was a trespasser and had no right to touch, move, or sit in any chair in that yard, and that contention will not receive further consideration.

It is urged that Brian's action in moving the chair constituted a battery. A definition (not all-inclusive but sufficient for our purpose) of a battery is the intentional infliction of a harmful bodily contact upon another. The rule that determines liability for battery is given in 1 Restatement, Torts, 29, § 13, as:

"An act which, directly or indirectly, is the legal cause of a harmful contact with another's person makes the actor liable to the other, if

"(a) the act is done with the intention of bringing about a harmful or offensive contact or an apprehension thereof to the other or a third person, and

"(b) the contact is not consented to by the other or the

other's consent thereto is procured by fraud or duress, and "(c) the contact is not otherwise privileged."

We have in this case no question of consent or privilege. We therefore proceed to an immediate consideration of intent and its place in the law of battery. In the comment on clause (a), the Restatement says:

"*Character of actor's intention.* In order that an act may be done with the intention of bringing about a harmful or offensive contact or an apprehension thereof to a particular person, either the other or a third person, the act must be done for the purpose of causing the contact or apprehension or with knowledge on the part of the actor that such contact or apprehension is substantially certain to be produced."

See, also, Prosser on Torts 41, § 8.

We have here the conceded volitional act of Brian, *i.e.*, the moving of a chair. Had the plaintiff proved to the satisfaction of the trial court that Brian moved the chair while she was in the act of sitting down, Brian's action would patently have been for the purpose or with the intent of causing the plaintiff's bodily contact with the ground, and she would be entitled to a judgment against him for the resulting damages. *Vosburg v. Putney* (1891), 80 Wis. 523, 50 N. W. 403; *Briese v. Maechtle, supra.*

The plaintiff based her case on that theory, and the trial court held that she failed in her proof and accepted Brian's version of the facts rather than that given by the eyewitness who testified for the plaintiff. After the trial court determined that the plaintiff had not established her theory of a battery (*i.e.*, that Brian had pulled the chair out from under the plaintiff while she was in the act of sitting down), it then became concerned with whether a battery was established under the facts as it found them to be.

In this connection, we quote another portion of the comment on the "Character of actor's intention," relating to clause (a) of the rule from the Restatement heretofore set forth:

"It is not enough that the act itself is intentionally done and this, even though the actor realizes or should realize

that it contains a very grave risk of bringing about the contact or apprehension. Such realization may make the actor's conduct negligent or even reckless but unless he realizes that to a substantial certainty, the contact or apprehension will result, the actor has not that intention which is necessary to make him liable under the rule stated in this Section."

■ A battery would be established if, in addition to plaintiff's fall, it was proved that, when Brian moved the chair, he knew with substantial certainty that the plaintiff would attempt to sit down where the chair had been. If Brian had any of the intents which the trial court found, in the italicized portions of the findings of fact quoted above, that he did not have, he would of course have had the knowledge to which we have referred. The mere absence of any intent to injure the plaintiff or to play a prank on her or to embarrass her, or to commit an assault and battery on her would not absolve him from liability if in fact he had such knowledge. *Mercer v. Corbin* (1889), 117 Ind. 450, 20 N. E. 132, 3 L. R. A. 221. Without such knowledge, there would be nothing wrongful about Brian's act in moving the chair, and, there being no wrongful act, there would be no liability.

■ While a finding that Brian had no such knowledge can be inferred from the findings made, we believe that before the plaintiff's action in such a case should be dismissed there should be no question but that the trial court had passed upon that issue; hence, the case should be remanded for clarification of the findings to specifically cover the question of Brian's knowledge, because intent could be inferred therefrom. If the court finds that he had such knowledge, the necessary intent will be established and the plaintiff will be entitled to recover, even though there was no purpose to injure or embarrass the plaintiff. *Vosburg v. Putney, supra.* If Brian did not have such knowledge, there was no wrongful act by him, and the basic premise of liability on the theory of a battery was not established.

■ It will be noted that the law of battery as we have

discussed it is the law applicable to adults, and no significance has been attached to the fact that Brian was a child less than six years of age when the alleged battery occurred. The only circumstance where Brian's age is of any consequence is in determining what he knew, and there his experience, capacity, and understanding are of course material.

From what has been said, it is clear that we find no merit in plaintiff's contention that we can direct the entry of a judgment for eleven thousand dollars in her favor on the record now before us.

Nor do we find any error in the record that warrants a new trial.

What we have said concerning intent in relation to batteries caused by the physical contact of a plaintiff with the ground or floor as the result of the removal of a chair by a defendant, furnishes the basis for the answer to the contention of the plaintiff that the trial court changed its theory of the applicable law after the trial, and that she was prejudiced thereby.

It is clear to us that there was no change in theory so far as the plaintiff's case was concerned. The trial court consistently from beginning to end recognized that, if the plaintiff proved what she alleged and her eyewitness testified, namely, that Brian pulled the chair out from under the plaintiff while she was in the act of sitting down and she fell to the ground in consequence thereof, a battery was established. Had she proved that state of facts, then the trial court's comments about inability to find any intent (from the connotation of motivation) to injure or embarrass the plaintiff, and the italicized portions of his findings as above set forth, could have indicated a change of theory. But what must be recognized is that the trial court was trying in those comments and in the italicized findings to express the law applicable, not to the facts as the plaintiff contended they were, but to the facts as the trial court found them to be. The remand for clarification gives the plaintiff an opportunity to secure a judgment even though the trial court did not accept her version of the facts, if from all the evidence the trial court can find that Brian knew with sub-

stantial certainty that the plaintiff intended to sit down where the chair had been before he moved it, and still without reference to motivation.

■ The plaintiff-appellant urges as another ground for a new trial that she was refused the right to cross-examine Brian. Some twenty pages of cross-examination indicate that there was no refusal of the right of cross-examination. The only occasion that impressed us as being a restriction on the right of cross-examination occurred when plaintiff was attempting to develop the fact that Brian had had chairs pulled out from under him at kindergarten and had complained about it. Plaintiff's counsel sought to do this by asking questions concerning statements made at Brian's home and in a court reporter's office. When objections were sustained, counsel for plaintiff stated that he was asking about the conversations to refresh the recollection of the child, and made an offer of proof. The fact that plaintiff was seeking to develop came into the record by the very simple method of asking Brian what had happened at kindergarten. Consequently, what plaintiff offered to prove by the cross-examination is in the record, and the restriction imposed by the trial court was not prejudicial.

■ It is argued that some courts predicate an infant's liability for tort upon the basis of the existence of an estate in the infant; hence it was error for the trial court to refuse to admit as an exhibit a policy of liability insurance as evidence that there was a source from which a judgment might be satisfied. In our opinion, the liability of an infant for his tort does not depend upon the size of his estate or even upon the existence of one. That is a matter of concern only to the plaintiff who seeks to enforce a judgment against the infant.

■ The motion for a new trial was also based on newly discovered evidence. The case having been tried to the court, the trial judge was certainly in a position to know whether that evidence would change the result on a new trial. It was not of a character that would make the denial of the motion an abuse of discretion.

█ The plaintiff complains, and with some justice, that she was not permitted to take a pretrial deposition of the defendant, Brian Dailey. While Rule of Pleading, Practice, and Procedure 30 (b), 34A Wn. (2d) 91, gives the trial court the right "for good cause shown" to prevent the taking of a deposition, it seems to us that though it might well have been taken under the supervision of the court to protect the child from leading, misleading, and confusing questions, the deposition should have been allowed, if the child was to be permitted to testify at the trial. If, however, the refusal to allow the taking of the deposition was an abuse of discretion, and that we are not prepared to hold, it has not been established that the refusal constituted prejudicial error. (Parenthetically we would add that the right to a review of the rulings on pretrial procedure or with respect to depositions or discovery or incidental procedural motions preceding the trial seems to be limited to an appeal from a final judgment (2 Barron and Holtzoff, Federal Practice and Procedure (rules ed.), § 803; 3 *Id.* § 1552) and realistically such a review is illusory for the reasons given by Prof. David W. Louisell. See 36 Minn. L. Rev. 654.)

The cause is remanded for clarification, with instructions to make definite findings on the issue of whether Brian Dailey knew with substantial certainty that the plaintiff would attempt to sit down where the chair which he moved had been, and to change the judgment if the findings warrant it.

Costs on this appeal will abide the ultimate decision of the superior court. If a judgment is entered for the plaintiff, Ruth Garratt, appellant here, she shall be entitled to her costs on this appeal. If, however, the judgment of dismissal remains unchanged, the respondent will be entitled to recover his costs on this appeal.

Remanded for clarification.

SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.

_____

May 3, 1955. Petition for rehearing denied.